# IN THE DISTRICT COURT OF THE VIRGIN ISLANDS
# DIVISION OF ST. THOMAS AND ST. JOHN

| | |
|---|---|
| MILLENTINE COATES, | ) |
| Plaintiff, | ) ) ) |
| vs. | ) Civil No. 2018-35 |
| FORD MOTOR COMPANY and XYZ CORPORATION, | ) ) ) ) |
| Defendants. | ) ) |

## MEMORANDUM OPINION AND ORDER

Before the Court is plaintiff Millentine Coates' motion to compel discovery from defendant Ford Motor Company. [ECF 56]. Ford opposes the motion. [ECF 57].

## I.     BACKGROUND

Coates alleges that on September 22, 2016, the driver's side airbag (manufactured by an as-yet-unidentifed company) of her 2002 Ford Explorer spontaneously exploded, causing her to lose control and crash. [ECF 20] at ¶¶ 5, 44-45.[1]  Coates asserted four counts against Ford, sounding in strict products liability, breach of express or implied warranty, negligence, and breach of express or implied contract.  Specifically, Coates alleges a myriad of manufacturing, design, marketing, assembly, testing and other failures. *See*, *e.g.,* [ECF 20] at ¶ 50-51, 53, 61.

On October 4, 2018, Ford moved to dismiss Coates' amended complaint on the basis that this Court lacks both general and specific personal jurisdiction. [ECF 25].  With respect to the latter, Ford argues that the subject vehicle "was designed in *Michigan*, manufactured in *Kentucky*, and then sold by Ford, a *Delaware* corporation with its principal place of business in *Michigan*, to a *New York* dealership." [ECF 26] at 2, 14; *see also* [ECF 26-1].[2]  In order to test these

---

[1] Coates originally filed suit in the Superior Court of the Virgin Islands; Ford removed the matter to this Court. [ECF 1]. Coates filed her First Amended Complaint on September 25, 2018. [ECF 20].

[2] Ford also has averred that the vehicle involved in the accident was

assertions, Coates sought to take jurisdictional discovery, which this Court allowed by Order dated October 23, 2018. [ECF 40]. The Court gave the parties until January 31, 2019, to complete that discovery, and directed plaintiff to supplement her arguments in opposition to dismissal, no later than February 15, 2019.[3] *Id.* Plaintiff served Ford with discovery requests on December 19, 2018. [ECF 47]. Ford responded on January 18, 2019. [ECF 51]. On January 29, 2019, the Court held a discovery conference with the parties, and on January 30 and 31, 2019, Ford served supplemental responses and objections. [ECFs 54, 55].[4] Coates filed the instant motion to compel on February 3, 2019. [ECF 56].

## II.    LEGAL STANDARDS

A. <u>The Scope of Discovery and Sanctions</u>

Rule 26(b) (1) provides as follows:

> Unless otherwise limited by court order, the scope of discovery is as follows: Parties may obtain discovery regarding any nonprivileged matter that is relevant to any party's claim or defense and proportional to the needs of the case, considering the importance of the issues at stake in the action, the amount in controversy, the parties' relative access to relevant information, the parties'

---

sold by Ford to an independently-owned Ford dealership located in New York. That dealer, in turn, sold the Explorer to the first private owner, a New York resident, in 2002. *See* Carfax Vehicle History Report, Exh. B to Ford's Motion to Dismiss (DE 26-2). That first owner transferred the 2002 Explorer to a dealership in North Carolina, a third-party unrelated to Ford in any way, which then sold the vehicle to a second private owner in North Carolina in 2005. *Id.* The 2002 Explorer was then transferred to another private owner in North Carolina in 2009. *Id.* Following that last recorded transaction, the vehicle apparently made its way into Plaintiff's possession in the U.S.V.I. Plaintiff alleges she purchased the 2002 Explorer in 2009.

[ECF 57] at 11-12 (citation omitted).

[3] Coates filed her opposition on October 30, 2018, arguing that Ford "maintained–and continues to maintain–substantial and deliberate contacts with this forum, because it continues to conduct business in this Territory as it has for decades, and because Ford regularly litigates in this Territory . . . ." [ECF 45] at 1-2. As a result, Coates argues that "an action against Ford in the Virgin Islands does not offend traditional notions of fair play and substantial justice." *Id.* at 2. Coates concedes, however, that an exercise of general jurisdiction would not be appropriate. *Id.* at 3.

[4] The parties also conferred among themselves in an effort to resolve the dispute. [ECF 56] at 1-2; [ECF 57] at 2.

> resources, the importance of the discovery in resolving the issues, and whether the burden or expense of the proposed discovery outweighs its likely benefit. Information within this scope of discovery need not be admissible in evidence to be discoverable.

FED. R. CIV. P. 26(b)(1).[5] Further, Federal Rule of Civil Procedure 37 allows a party to move to compel discovery where another party fails to make disclosures, answer an interrogatory under Rule 33, produce documents under Rule 34 or respond to requests for admissions under Rule 36. FED. R. CIV. P. 37(a)(3)(A), (B)(iii), and (B)(iv); FED. R. CIV. P. 37(c)(2); FED. R. CIV. P. 37(d). If the court grants the motion, it must also require the recalcitrant party, or the attorney advising the conduct, or both, to pay the movant's reasonable expenses incurred in making the motion, including attorney's fees.[6] FED. R. CIV. P. 37(a)(5)(A); *see also* FED. R. CIV. P. 37(c)(2); FED. R. CIV. P. 37(d)(3). The court may also impose sanctions on any party that fails to comply with a discovery order. FED. R. CIV. P. 37(b).

  B. <u>Personal Jurisdiction</u>

Whether an action may be maintained against a corporate entity in a particular court is a matter of personal jurisdiction, which depends on "the defendant's relationship to the forum State." *Bristol-Myers Squibb Co. v. Superior Ct.*, 137 S. Ct. 1773, 1779 (2017) (quoting *Walden v. Fiore*, 134 S. Ct. 1115 (2014); *Phillips Petroleum Co. v. Shutts*, 472 U. S. 797, 806-07 (1985)). The Supreme Court has "recognized two types of personal jurisdiction: 'general' (sometimes called 'all-purpose') jurisdiction and 'specific' (sometimes called 'case-linked') jurisdiction." 137 S.

---

[5] Plaintiff's reliance on the "reasonably calculated to lead to the discovery of admissible evidence" language, [ECF 56] at 3, is misplaced. That language has been deleted from Rule 26, and the 2015 amendments to the federal rules make clear that proportionality concerns relative to the scope of discovery are of heightened significance. *See* FED. R. CIV. P. 26(b)(1) advisory committee's note to 2015 amendment.

[6] A court may decline to impose sanctions if it determines that the failure to respond was "substantially justified," or if there are other circumstances that would "make an award of expenses unjust." *See, e.g.*, FED. R. CIV. P. 37(a)(5)(A).

Ct. 1779-80 (citing *Goodyear Dunlop Tires Ops. v. Brown*, 564 U.S. 915, 919 (2011)). The Court explained:

> A court may assert general jurisdiction over foreign (sister-state or foreign-country) corporations to hear any and all claims against them when their affiliations with the State are so "continuous and systematic" as to render them essentially at home in the forum State. *See International Shoe* [*v. Washington*], 326 U.S., at 317, 66 S. Ct. 154, 90 L. Ed. 95. Specific jurisdiction, on the other hand, depends on an "affiliatio[n] between the forum and the underlying controversy," principally, activity or an occurrence that takes place in the forum State and is therefore subject to the State's regulation.

*Goodyear*, 564 U.S. at 919 (citation omitted). With regard to specific jurisdiction, "[w]hen there is no such connection, specific jurisdiction is lacking regardless of the extent of a defendant's unconnected activities in the State." *Bristol-Myers*, 137 S. Ct. at 1781. "For specific jurisdiction, a defendant's general connections with the forum are not enough. As we have said, '[a] corporation's continuous activity of some sorts within a state . . . is not enough to support the demand that the corporation be amenable to suits unrelated to that activity.'" *Id*. (citations and internal quotation marks omitted).

In *O'Connor v. Sandy Lane Hotel Company*, 496 F.3d 312 (3d Cir. 2007), the United States Court of Appeals for the Third Circuit articulated a three-part test for determining whether specific jurisdiction exists:

> First, the defendant must have "purposefully directed [its] activities" at the forum. Second, the litigation must "arise out of or relate to" at least one of those activities. And third, if the prior two requirements are met, a court may consider whether the exercise of jurisdiction otherwise "comport[s] with 'fair play and substantial justice.'"

*Id*. at 317 (internal citations omitted). With respect to the first prong, "what is necessary is a deliberate targeting of the forum. Thus, the 'unilateral activity of those who claim some

relationship with a nonresident defendant' is insufficient." *Id.; see also Shuker v. Smith & Nephew, PLC*, 885 F.3d 760, 780 (3d Cir. 2018) (rejecting a "stream of commerce" theory of specific jurisdiction, and observing that efforts "to exploit a national market are insufficient" to establish specific jurisdiction) (citations omitted). As to the second prong, the Third Circuit in *O'Connor* rejected a relaxed "but for" causation test as "overly inclusive," and held that a "closer and more direct causal connection" was required. 496 F.3d at 322.

As for the third prong, the *O'Connor* Court noted:

> The existence of minimum contacts makes jurisdiction presumptively constitutional, and the defendant "must present a compelling case that the presence of some other considerations would render jurisdiction unreasonable." *See Burger King,* 471 U.S. at 477; *see also Pennzoil Prods. Co. v. Colelli & Assocs., Inc.,* 149 F.3d 197, 207 (3d Cir. 1998) (noting that if minimum contacts are present, then jurisdiction will be unreasonable only in "rare cases"); *Grand Entm't Group, Ltd. v. Star Media Sales, Inc.,* 988 F.2d 476, 483 (3d Cir. 1993) ("The burden on a defendant who wishes to show an absence of fairness or lack of substantial justice is heavy.").

496 F.3d at 324. Among the factors a court should consider in balancing jurisdictional reasonableness are "'the burden on the defendant, the forum State's interest in adjudicating the dispute, the plaintiff's interest in obtaining convenient and effective relief, the interstate [and international] judicial system's interest in obtaining the most efficient resolution of controversies,' and '[t]he procedural and substantive interests of other nations.'" *Id.* (citations omitted).

### III. DISCUSSION

The Court first considers the timeliness of Coates' motion. Ford argues that Coates' motion is untimely, as she served her discovery requests late in the discovery period, and then moved to compel a few days after the deadline to complete discovery has passed. [ECF 57] at 1-3. While the Court generally agrees that such motions should be filed before the discovery cut-

off date, in this instance, the jurisdictional discovery period was somewhat truncated, and Ford continued to supplement its production up to the end of the period. In these circumstances, the Court finds no issue with the timing of the motion.[7]

The Court now considers the discovery requests at issue. Plaintiff seeks to compel Ford to more fully respond to seven requests for document production ("RFP") and six interrogatories (Rog.").

- RFP #1. As modified, Coates seeks documents "sent to persons in the VI" that relate to recall notices concerning the 2002 Ford Explorer, and justifies the request as "to aid to establish, in part, the depth of the business transacted by Ford within the territory." [ECF 56] at 5.

- RFP #2. Coates seeks "documents relating to recall notices and notices concerning mechanical work sent to plaintiff by Ford." Plaintiff argues these are "relevant to the jurisdictional determination." *Id*.

- RFP #3. Coates seeks "documents relating to recall notices sent to any person who owns Ford vehicles located in the Virgin Islands." In support, Coates argues that "information sought again goes to the extent that Ford engages the services of local businesses to perform its warranty and recall work . . . This goes directly to the issue of the fairness of hauling Ford into a Virgin Islands Court. We believe that we are entitled to this information because it is helpful and relevant." *Id*. at 5-6.

- RFP #4. Coates seeks "[c]opies of all complaints and answers in any action filed in a court of the Virgin Islands or United States District Court for the Virgin Islands wherein Ford was an interested or intervening party," contending "such information would be used to disclose the depth of Ford's use of the local court system, its contacts over the many years in the Virgin Islands and the fairness of Ford being required to defend in the Virgin Islands." *Id*. at 7.

- RFP #5. Coates seeks "[c]opies of any contracts, agreements or arrangements with any Ford employee, non-employee agent, representative or independent contractor, whether natural person, company or corporation that has contracted, agreed, or has an arrangement with Ford who has been located, resided in or worked at any location in

---

[7] The Court observes that the parties conferred several times regarding this dispute, but they have not filed a stipulation as required by Local Rule of Civil Procedure 37.2(a). Local Rule 37.2(c) provides that the "Court will not consider any discovery motion in the absence of (1) the signed stipulation and certification required by LRCi 37.2(a)," or (2) a declaration regarding a failure to confer or execute the stipulation. LRCi 37.2(c). Notwithstanding the local rule, the Court believes the parties have met the spirit of the rule, and it will therefore consider the merits of the motion.

the Virgin Islands at any time within the period between December 1990 and the Present." Coates claims "[t]his information goes to the depth of contacts had with companies and business entities and persons doing business in the US Virgin Islands." *Id*. at 7.

- RFP #6. Coates seeks "all contracts with Ford and any person that operated a business in the United States Virgin Islands and who was/is authorized to sell, rent, lease or repair Ford vehicles." *Id*.

- RFP #7. Coates seeks any "contracts with Ford and any person in the Virgin Islands," saying the "material goes to the fairness of haling Ford into the courts of the Virgin Islands." *Id*. at 8.

- Rog. #2. As modified, Coates asks Ford to "[s]tate whether any owners, officers, agents, directors, or employees, of Ford have conducted business activities on behalf of Ford in the US Virgin Islands related to the sale, lease, or servicing of Ford automobiles" and then asks for detailed information regarding any such person or entity identified, averring that "contacts with the forum are relevant." *Id*. at 9.

- Rog. #3. As modified, Coates asks Ford to identify "all instances that any owner, shareholder, employee, director, officer, agent, and/or representative of Ford was physically present in the United States Virgin Islands during the time period from 1997 until present for any Ford related business purpose," and then to provide details of such visits, contending such information "evinces contacts with the forum state." *Id*. at 10.

- Rog. #7. Coates asks Ford to identify "every person that operated a business located in the United States Virgin Islands and was authorized to sell, rent, lease, or repair Ford vehicles." *Id*.

- Rog. #9. Coates asks for litigation to be identified where "Ford was a party or where Ford provided or paid for any portion of the costs of the litigation," because such information "provides additional insight into Ford contacts with the forum." *Id*. at 11.

- Rog. #10. Coates asks Ford to identify persons with knowledge of "advertising and promotional materials provided to authorized Ford dealers located in the United States Virgin Islands for the years 2002 through 2009 inclusive, concerning the Ford Explorer." Coates claims such information "goes directly to Ford's forum related activities," and alleges she decided to purchase the Ford Explorer based on advertising regarding "safety, reliability and durability" of that vehicle. *Id*.

- Rog. #17. Coates asks Ford to identify "the market share Ford has held for the sale of new vehicles in the U.S. Virgin Islands for the years 1990 to Present." *Id*.

To the extent that Coates argues that the discovery sought is for the purpose of demonstrating the amount of contacts that Ford has had with the Virgin Islands, or the extent of business transacted by Ford in the territory, it is not directly related to whether specific jurisdiction exists over Ford. *Goodyear*, 564 U.S. at 919 ("Specific jurisdiction . . . depends on an 'affiliatio[n] between the forum and the underlying controversy,' principally, activity or an occurrence that takes place in the forum State'). *See also Bristol-Myers*, 137 S. Ct. at 1781 ("[w]hen there is no such connection, specific jurisdiction is lacking regardless of the extent of a defendant's unconnected activities in the State; . . . a defendant's general connections with the forum are not enough."). Thus, applying the proportionality considerations and the balancing required by Rule 26(b)(1), the Court finds that requests for production 1, 3, 4, 5, 6 and 7, and interrogatories 2, 3, 7 and 9, which Coates argues demonstrate contacts with the forum, do not bear significantly on issues pertaining to specific jurisdiction. As a result, the motion to compel as to this discovery is denied.

With respect to request for production 2, seeking recall and other notices sent to plaintiff, Coates merely states that these are "relevant to the jurisdictional determination." [ECF 56] at 5. According to Coates, Ford agreed to provide "a list of Field Service Actions . . . that would have been sent to plaintiff." *Id.* Ford apparently produced a "VIN FSA Details document" in response to request for production 1. *Id.* If there are any notices that appear on the "details document," Ford should produce them.

As to interrogatory 10, Coates claims the information sought bears on "Ford's forum related activities." *Id* at 11. Coates, however, asked Ford to identify persons with knowledge of "advertising and promotional materials provided to authorized Ford dealers located in the

United States Virgin Islands for the years 2002 through 2009 inclusive, concerning the Ford Explorer." *Id.* The request for identities seems misplaced. Having made these requests so late in the discovery period, it is difficult to conceive of what use the identifications might have been to Coates.

Further, even if Coates requested the advertising and promotion materials themselves, the request would fare no better. Although Coates seems to suggest she would not have purchased her vehicle "but for" Ford's advertising as to safety, in *O'Connor* the Third Circuit rejected a "but for" standard for determining specific jurisdiction. 496 F.3d at 322. The connection to be shown, and thus the information sought, has to be more direct. Moreover, Coates does not even allege that she purchased her vehicle from an authorized Ford dealer in the Virgin Islands; thus materials provided to such entities may be irrelevant. Finally, Coates alleges her injuries arose primarily from a defective condition in the vehicle, *e.g.*, [ECF 20] at ¶¶ 48-49. Accordingly, advertising and promotional material of the type sought do not appear proportional to the needs of the case at this stage, as opposed to later when full discovery is permitted.

Lastly, Coates seeks information regarding the "market share Ford has held for the sale of new vehicles in the U.S. Virgin Islands for the years 1990 to Present." [ECF 56] at 11. Plaintiff offers no reason why such information relates to specific jurisdiction. The motion to compel as to interrogatory 17 will be denied.

The premises considered, **IT IS HEREBY ORDERED** that, with the exception of any supplementation of request for production 2, the motion to compel is DENIED. Any such supplementation shall be made no later than March 13, 2019.

**Dated:** March 11, 2019              S_____
                                                          **RUTH MILLER**
                                                          United States Magistrate Judge